UNITED STATES of America, Plaintiff,

v.

**Daniel S. DUCLOW, Defendant.**

**Crim. No. 85–466–C.**

United States District Court,
D. Massachusetts.

April 8, 1986.

Barry M. Haight, Buckley, Haight, Muldoon, Jubinville & Gilligan, P.C., Milton, Mass., for defendant.

Brackett B. Denniston, III, U.S. Atty., Boston, Mass., for plaintiff.

## MEMORANDUM

CAFFREY, Chief Judge.

Defendant, Daniel S. Duclow, has been indicted on two counts of perjury under 18 U.S.C. § 1623 for allegedly lying before a grand jury which was investigating possible fraud on the part of his employer, Hybrid Components, Inc., and its employees. According to the defendant, the government engaged in prosecutorial misconduct which induced him to make certain incriminating statements in violation of his due process rights guaranteed by the Fifth Amendment to the United States Constitution. The matter is now before the Court on defendant's motion to dismiss the indictment or, in the alternative, to suppress statements made by him.

The facts, as gleaned from the affidavits offered by the defendant, show that the defendant's sister, Nancy A. Drown, met with Assistant United States Attorney Brackett B. Denniston, III ("AUSA Denniston") and Special Agent Baker of the Federal Bureau of Investigation ("SA Baker") on August 14, 1985. Ms. Drown appeared in response to a subpoena to appear before a federal grand jury. When she was informed that the grand jury was not sitting that day because of insufficient jurors, she agreed to an interview with AUSA Denniston and SA Baker. During the interview, AUSA Denniston told Drown that her brother, the defendant, had lied when he testified before the grand jury in April of 1985 and that AUSA Denniston would "have to get my brother back in here to straighten it out." AUSA Denniston also told Drown that "it would be up to the grand jury whether or not my brother

would be charged." SA Baker allegedly told Drown that the investigators were not after people at her or her brother's level, gave her his card, and asked her to have her brother call him.

Following the interview, Drown met with the defendant and told him the substance of the August 14 meeting. The defendant then telephoned SA Baker and arranged to meet with him the following day, August 16, 1985, in SA Baker's office. At that interview, which was attended by the defendant, SA Baker and Drown, the defendant admitted that he had given untruthful testimony to the federal grand jury in April of 1985. The defendant also stated that he had initiated the contact because Drown told him that SA Baker and AUSA Denniston wanted him to "come in to straighten out the situation." At the end of the interview, SA Baker stated that he would make AUSA Denniston aware of the interview and that the defendant had come forward with a truthful statement. SA Baker also advised the defendant that the new information would go to the grand jury and that it "was up to the grand jury to determine whether [the defendant] would be charged." SA Baker also suggested that the grand jury would understand because of the brother-sister relationship, and that if the defendant and Drown did not hear anything in a week or two, everything was all right. Neither the defendant nor Drown were represented by counsel during the interviews. In December, 1985, the defendant was indicted for perjury. The defendant now seeks to dismiss that indictment or, in the alternative, to have his confession to SA Baker suppressed.

■ Courts are reluctant to dismiss an indictment for prosecutorial misconduct because of the constitutional doctrine of separation of powers which mandates independence of the grand jury and the prosecutor. *United States v. Ogden,* 703 F.2d 629, 636 (1st Cir.1983). An indictment will be dismissed only when the prosecutorial misconduct is so serious and blatant that the integrity of the judicial process has been compromised. *Id. Accord United States v.*

*Tham,* 665 F.2d 855, 863 (9th Cir.1981) (dismissal of indictment required only in extreme cases, such as where prosecutor knowingly presented perjured testimony). When the government acquires incriminating evidence in violation of a defendant's Fifth Amendment rights, the most the defendant may be entitled to is suppression of the evidence. *United States v. Blue,* 384 U.S. 251, 255, 86 S.Ct. 1416, 1419, 16 L.Ed.2d 510 (1966).

■ I rule that the facts in this case do not reveal the kind of flagrant prosecutorial misconduct which warrants dismissal of an indictment. This case is clearly distinguishable from *United States v. Rodman,* 519 F.2d 1058 (1st Cir.1975), upon which the defendant heavily relies. In *Rodman,* the government induced the defendant to give statements of a self-incriminating nature by promising that it would strongly recommend that the defendant not be prosecuted, and then failed to fulfill that promise. *Id.* at 1059. In contrast, the defendant before this Court alleges only that the government requested that the defendant come in "to straighten out" the perjury issue, and that once the defendant had confessed to testifying untruthfully, SA Baker said that he would speak to AUSA Denniston about the defendant coming forward. There is no evidence of any promise made to the defendant prior to his confession to SA Baker, or any *quid pro quo* agreement, as there was in *Rodman.*

■ The defendant argues that even if the indictment is not dismissed, the defendant's self-incriminating statements to SA Baker should be suppressed. A confession must be voluntary; a suspect cannot be compelled to incriminate himself by the use of threats or promises, or by the exertion of any improper influence. *Malloy v. Hogan,* 378 U.S. 1, 7, 84 S.Ct. 1489, 1493, 12 L.Ed.2d 653 (1964). A promise to bring a defendant's cooperation to the attention of the prosecuting attorney does not, however, constitute a coercive promise suffi-

cient to make any subsequent statements involuntary and inadmissible. *United States v. Baldacchino*, 762 F.2d 170, 179 (1st Cir.1985). In the case before this Court, SA Baker apparently stated that he would bring the defendant's cooperation to the attention of AUSA Denniston *after* the defendant had confessed. This set of facts presents a much weaker argument for suppression than where promises are made *before* the confession. I note that at both interviews the defendant and Drown were told that it was up to the grand jury to decide whether the defendant would be charged with perjury. No promise was made that the Assistant U.S. Attorney would urge the grand jury not to indict. Moreover, when the government presented the perjury question to the grand jury, it did advise the grand jury that the defendant had admitted that he lied and that he had done so to protect other people in the company, including his sister. The government thereby fulfilled its promise to the defendant. In light of the foregoing, I rule that the defendant's confession to SA Baker on August 16, 1985 was voluntary and should not be suppressed.

Order accordingly.

### ORDER

In accordance with memorandum filed this date, it is ORDERED:

Defendant's motion to dismiss indictment or, in the alternative, to suppress statements is denied.